UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MIGUEL DIAZ GARCIA,

           Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social
Security,

           Defendant.

) Case No. CV 15-3440-JPR
)
)
) **MEMORANDUM OPINION AND ORDER**
) **AFFIRMING COMMISSIONER**
)
)
)
)
)
)
)

**I.   PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed January 19, 2016, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

## II.   BACKGROUND

Plaintiff was born in 1955.  (Administrative Record ("AR") 150.)  He completed sixth grade and worked as a waiter.  (AR 167.)

On June 25, 2012, Plaintiff applied for DIB, alleging that he had been unable to work since June 10, 2010, because of back pain, right-shoulder and -leg pain, high cholesterol, and high blood pressure.  (AR 17, 77-78, 150-53, 166.)  After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 89-90.)  A hearing was held on November 13, 2013, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and two medical experts.  (AR 39-66.)  In a written decision issued November 19, 2013, the ALJ found Plaintiff not disabled.  (AR 17-29.)  On March 27, 2015, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  This action followed.

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.

2

1  *Lingenfelter*, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec.</u>
2  <u>Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether
3  substantial evidence supports a finding, the reviewing court
4  "must review the administrative record as a whole, weighing both
5  the evidence that supports and the evidence that detracts from
6  the Commissioner's conclusion."   <u>Reddick v. Chater</u>, 157 F.3d 715,
7  720 (9th Cir. 1996).   "If the evidence can reasonably support
8  either affirming or reversing," the reviewing court "may not
9  substitute its judgment" for the Commissioner's.   <u>Id.</u> at 720-21.

10 **IV.   THE EVALUATION OF DISABILITY**

11      People are "disabled" for purposes of receiving Social
12 Security benefits if they are unable to engage in any substantial
13 gainful activity owing to a physical or mental impairment that is
14 expected to result in death or has lasted, or is expected to
15 last, for a continuous period of at least 12 months.   42 U.S.C.
16 § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.
17 1992).

18      A.   <u>The Five-Step Evaluation Process</u>

19      The ALJ follows a five-step sequential evaluation process to
20 assess whether a claimant is disabled.   20 C.F.R.
21 § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
22 Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the
23 Commissioner must determine whether the claimant is currently
24 engaged in substantial gainful activity; if so, the claimant is
25 not disabled and the claim must be denied.   § 404.1520(a)(4)(i).

26      If the claimant is not engaged in substantial gainful
27 activity, the second step requires the Commissioner to determine
28 whether the claimant has a "severe" impairment or combination of

3

impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied.  § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination comprises the fifth and final step in the

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1   sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828

2   n.5; <u>Drouin</u>, 966 F.2d at 1257.

3        B.   <u>The ALJ's Application of the Five-Step Process</u>

4        At step one, the ALJ found that Plaintiff had not engaged in

5   substantial gainful activity since June 10, 2010, the alleged

6   onset date.  (AR 19.)  At step two, he concluded that Plaintiff

7   had the severe impairments of tendonitis and low-back pain.  (AR

8   20.)  The ALJ found that Plaintiff's gastrointestinal reflux

9   disease and mental impairments were nonsevere (AR 20-23),

10  findings Plaintiff does not challenge.  At step three, the ALJ

11  determined that Plaintiff's impairments did not meet or equal any

12  of the impairments in the Listing.  (AR 23.)  At step four, he

13  found that Plaintiff had the RFC to perform "a wide range of

14  light work"; specifically, he could

15           lift and carry 20 pounds occasionally and 10 pounds

16           frequently; stand, walk and sit each up to 6 hours in

17           . . . an 8-hour workday, with normal breaks; push and

18           pull with the right upper extremity occasionally; never

19           climb a ladder, rope or scaffolds; climb a ramp and

20           stairs occasionally; balance, stoop, kneel, crouch and

21           crawl occasionally; and, unable to reach at or above

22           shoulder level with the right upper extremity.

23  (AR 23.)  Based on the VE's testimony, the ALJ concluded that

24  Plaintiff could perform his past relevant work as a waiter.  (AR

25  28.)  He also found that Plaintiff could perform other work in

26  the economy.  (AR 29.)  Accordingly, the ALJ found Plaintiff not

27  disabled.  (<u>Id.</u>)

28

**V.   DISCUSSION**

Plaintiff contends that the ALJ erred in (1) rejecting the opinion of his treating physician, Dr. William To, and (2) discounting his subjective complaints. (J. Stip. at 2-3.) For the reasons discussed below, remand is not warranted.

A.   <u>The ALJ Properly Assessed the Medical Evidence</u>

Plaintiff argues that the ALJ should have credited Dr. To's assessment of Plaintiff's physical limitations and need for a cane because it was well supported by the medical evidence and uncontradicted by the opinion of any treating or examining physician. (J. Stip. at 3-10, 8-10.)

1.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. <u>Lester</u>, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. <u>Id.</u>

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment

relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 404.1527(c)(2)-(6).

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id. (citing Lester, 81 F.3d at 830-31).  Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

        2.  Relevant facts

On March 7, 2012, Dr. To performed an annual physical exam, noting that Plaintiff complained of right-side abdominal pain and digestive-system symptoms.  (AR 188.)  Dr. To also noted that Plaintiff complained of "more low back pain" and had a history of "being shot with bullet fragments in lower thoracic spine and lower chest."  (Id.)  Dr. To recorded no abnormal examination findings and found that Plaintiff had normal ranges of motion of the neck and musculoskeletal system and a normal gait.  (AR 189.)  Plaintiff reported that he drank more than five alcoholic beverages every day.  (AR 192.)  Dr. To noted that Plaintiff was

"stable"; ordered an abdominal ultrasound, sigmoidoscopy,[2] chest x-ray, and lab tests; prescribed omeprazole;[3] referred him to physical therapy; and instructed him to stop drinking wine and contact the substance-abuse clinic. (AR 190.)

On April 19, 2012, Dr. To saw Plaintiff for a follow-up of his test results, noting that Plaintiff complained of right-ear pain and bleeding, nasal congestion, and increased reflux symptoms. (AR 210.) Dr. To did not record any abnormal examination findings. (AR 211.) He noted that Plaintiff was "stable," prescribed a cholesterol medication, and referred him to physical therapy for an "activities evaluation." (AR 212.) That same day, a medical assistant noted that Plaintiff exercised seven days a week by walking for 30 minutes. (AR 218; see also AR 343 (noting that Plaintiff "exercises 210 minutes per week at a moderate to strenuous level").)

On May 14, 2012, Plaintiff saw a physical therapist, who noted that Plaintiff complained of constant shoulder and low-back pain and had an "unsteady gait." (AR 372.) The therapist provided Plaintiff with a back brace and single-point cane and instructed him to use both for "community ambulation." (AR 374.) She noted that he needed the cane "at this time." (Id.) She

---

[2] A sigmoidoscopy is a procedure used to see inside the sigmoid colon and rectum. Sigmoidoscopy, MedlinePlus, https://www.nlm.nih.gov/medlineplus/ency/article/003885.htm (last updated June 7, 2016).

[3] Omeprazole is used to treat gastroesophageal reflux disease. Omeprazole, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a693050.html (last updated July 15, 2014).

also gave him handouts regarding a home-exercise program, stated that he did not require further physical therapy, and discharged him from physical therapy.  (Id.)

On May 16, 2012, Dr. To noted that Plaintiff complained that he had had back pain "for years" from a "bullet fragment in his back."  (AR 243.)  Dr. To did not record any abnormal findings on physical examination.  (AR 244.)  He noted that Plaintiff was "stable" and referred him to physical therapy.  (AR 245.)  A medical assistant noted that Plaintiff exercised three days a week by walking for 30 minutes.  (AR 249; see also AR 245 (noting that Plaintiff "exercises 90 minutes per week at a moderate to strenuous level").)

Plaintiff was hospitalized from July 13 to 18, 2012, for "alcohol intoxication/withdrawal."  (AR 274.)  A doctor noted that Plaintiff had a blood alcohol level of .300 upon admission.  (AR 275.)  Plaintiff reported that he had been drinking every day for 39 years, drank two to six bottles of wine a day, had smoked marijuana every day for three to five years, and had not eaten for two weeks.  (AR 275, 280, 283-84.)  During his hospital stay, Dr. Emily Nguyen noted that Plaintiff had "no joint tenderness," his motor responses and sensation were intact, and he was independent in his activities of daily living.  (AR 284-85.)  Dr. Igor Neyman found that Plaintiff was "moving all extremities" and had "no muscle strength or sensory deficits of bilateral upper and lower extremities."  (AR 276, 454.)  Upon discharge, Plaintiff was noted to have "leg weakness" that was "likely related to alcohol withdrawal and should resolve with time," and he was given a front-wheel walker.  (AR 275.)

9

On August 10, 2012, Dr. To noted that Plaintiff complained of depression for months that had been worse in the preceding few weeks, shoulder pain "on and off," and recurrent back pain "due to bullet fragments." (AR 265.) Dr. To did not record any abnormal examination findings. (Id.) He again referred Plaintiff to physical therapy, recommended "[h]eat to [right] shoulder nightly," and prescribed Prozac. (AR 267.)

On September 13, 2012, Dr. To saw Plaintiff for a follow-up of his blood-test results. (AR 594.) Dr. To's only abnormal examination finding was that Plaintiff's right shoulder was tender. (AR 595.) He ordered a right-shoulder x-ray and referred Plaintiff to orthopedics. (AR 596, 599.) A medical assistant noted that Plaintiff "exercises 150 minutes per week at a moderate to strenuous level." (AR 594, 596.) A right-shoulder x-ray taken that day showed stable degenerative joint disease at the acromioclavicular joint but no acute fracture or soft-tissue abnormality and normal alignment. (AR 597-98.)

On September 24, 2012, Dr. Michael Philip Hall, an orthopedic surgeon, saw Plaintiff for his complaints of worsening right-shoulder pain. (AR 606-08.) Plaintiff reported aching pain of 3 on a scale of 10 and occasional numbness and tingling in his right upper extremity. (AR 606.) Dr. Hall found that Plaintiff had a mildly positive Spurling test[4] but no tenderness and a symmetric range of motion of the cervical spine. (AR 607.)

---

[4] The Spurling test is used to evaluate nerve-root impingement in the cervical spine. See Stedman's Medical Dictionary 1809 (27th ed. 2000).

10

Plaintiff's right shoulder had mild dyskinesis[5] with shoulder range of motion and somewhat reduced motor strength.[6] (AR 607-08.) Plaintiff had reduced range of motion of the right shoulder but no swelling, atrophy, or tenderness. (AR 607.) His left shoulder had no misalignment, atrophy, edema, or tenderness and full, painless range of motion. (AR 608.) A right-shoulder x-ray taken that day showed stable "[s]evere degenerative/arthritic changes" at the acromioclavicular joint, stable mild degenerative joint disease at the glenohumeral joint, no soft-tissue abnormality, and no acute fracture. (AR 610.) Dr. Hall diagnosed rotator-cuff tendinopathy and possible rotator-cuff tear, acromioclavicular osteoarthritis, and possible cervical radiculopathy. (AR 608.) He recommended ice at bedtime, the anti-inflammatory medication Mobic[7] for two weeks, physical therapy, and home exercises. (Id.) Dr. Hall also noted that Plaintiff drank "wine every day." (AR 607.)

On December 4, 2012, Plaintiff saw a physical therapist for treatment of his right-shoulder condition. (AR 627.) The therapist noted that Plaintiff used a cane for ambulation and recommended one session of physical therapy a week for 12 weeks.

---

[5] Dyskinesis is difficulty in performing voluntary movements. See Stedman's Medical Dictionary 553 (27th ed. 2000).

[6] Plaintiff's motor strength was "5/5" for abduction, "4/5 with pain" for supraspinatus isolation, "5-/5 with pain" for external rotation, and "5-/5" for subscapularis. (AR 608.)

[7] Mobic, or meloxicam, is an anti-inflammatory drug used to relieve the pain, tenderness, swelling, and stiffness caused by arthritis. Meloxicam, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html (last updated Jan. 15, 2016).

1   (Id.)  On December 18, 2012, Dr. Hall saw Plaintiff for a follow-
2   up.  (AR 634.)  Plaintiff reported that physical therapy was not
3   helping and that he was not interested in injections.  (Id.)  Dr.
4   Hall recorded some findings similar to those at his previous
5   examination and diagnosed rotator-cuff tendinopathy, possible
6   rotator-cuff tear, and acromioclavicular osteoarthritis.  (AR
7   635.)  He recommended an MRI, home exercises, ice at bedtime, and
8   continued anti-inflammatory medication.  (Id.)

9        On January 30, 2013, Plaintiff underwent a thoracic-spine CT
10  scan to determine whether the bullet fragments around his spine
11  would preclude his undergoing an MRI.  (AR 647-48.)  The CT scan
12  showed healed gunshot fractures of one rib and a bullet fragment
13  in the 11th thoracic vertebra.  (AR 648.)  The radiologist noted
14  that "the trauma is old given the healed fractures" and that
15  "[n]o bullet fragments [were] seen in the region of the central
16  canal."  (Id.)  Because the bullet fragment in Plaintiff's
17  vertebra possibly abutted the aorta, an MRI was precluded.  (AR
18  648, 658.)  On February 19, 2013, a CT arthrogram of Plaintiff's
19  right shoulder showed a full-thickness partial-width tear of the
20  infraspinatus tendon, tearing or thinning of the supraspinatus
21  tendon, and mild degenerative changes.  (AR 662.)

22       On March 11, 2013, Plaintiff was discharged from physical
23  therapy because he had failed to return after his initial
24  December 4, 2012 visit.  (AR 672.)

25       On October 10, 2013, apparently more than a year after he
26  had last seen Plaintiff, Dr. To completed a Physical-RFC
27  questionnaire.  (AR 677-83.)  He stated that he had seen
28  Plaintiff for "a few months" and listed his diagnoses as chronic

12

back pain from a bullet in his thoracic spine and recurrent shoulder tendonitis. (AR 677.) Under "clinical findings," Dr. To wrote "walk [with] a cane" and "difficult to raise arms." (Id.) When asked whether Plaintiff had "[a]ny significantly reduced range of motion," Dr. To wrote "yes" without further explanation. (AR 678.) In a check-off list of "positive signs," Dr. To checked only "[m]uscle weakness"; he did not check the boxes for abnormal gait, sensory loss, tenderness, muscle atrophy, muscle spasm, swelling, or any other listed sign. (Id.) Dr. To did not believe that Plaintiff's impairments had lasted or could be expected to last at least 12 months. (AR 679.)

Dr. To opined that Plaintiff could walk less than one block before needing to rest. (AR 680.) He could sit for one hour and stand for 30 minutes at a time for a total of less than two hours each in an eight-hour day. (Id.) Plaintiff needed to walk for 15 minutes each hour and shift at will from sitting to standing or walking. (AR 680-81.) He needed to use a cane when standing and walking and would frequently need unscheduled 10-minute breaks. (AR 681.) Plaintiff could occasionally lift less than 10 pounds, and he had "significant limitations" on his ability to repetitively reach, handle, or finger. (Id.) Dr. To believed that Plaintiff had to avoid concentrated exposure to extreme heat or cold, high humidity, chemicals, solvents, cleaners, cigarette smoke, perfumes, fumes, odors, dusts, and gases. (AR 682.) He would be absent from work "constant[ly]." (Id.) When asked what the earliest date was that Plaintiff's symptoms and limitations applied, Dr. To wrote, "permanent." (AR 683.)

At the November 13, 2013 ALJ hearing, Dr. Harvey Alpern, who

specialized in cardiology and internal medicine (AR 137),
testified that he had reviewed Plaintiff's medical records, which
showed that Plaintiff's conditions included polysubstance abuse,
tendonitis and a torn tendon of the shoulder, and low-back pain
by history.  (AR 46-47.)  Dr. Alpern noted that Plaintiff had
been diagnosed with gastroesophageal reflux disease, but he
believed the condition was not severe.[8]  (AR 47-48.)  Dr. Alpern
opined that Plaintiff could lift 20 pounds occasionally and 10
pounds frequently; sit, stand, and walk for six out of eight
hours; and occasionally push and pull with the right upper
extremity, climb, balance, stoop, kneel, crouch, crawl, and climb
ramps or stairs.  (AR 49-50.)  Plaintiff could not climb ladders,
ropes, or scaffolds and could not reach above shoulder level with
his right upper extremity.  (AR 50-52.)  Plaintiff was not
limited in his ability to work at heights or around cold, heat,
wetness, humidity, or vibration.  (Id.)  Dr. Alpern stated that
he "saw no supporting evidence in the record" for a limitation
that Plaintiff must use a cane to walk.  (AR 51.)

          3.  Analysis

     The ALJ found that Plaintiff could perform "a wide range of
light work"; specifically, he could lift and carry 20 pounds
occasionally and 10 pounds frequently; stand, walk, and sit each
up to six hours in an eight-hour workday; occasionally push and
pull with the right arm, climb ramps and stairs, balance, stoop,

_____

          [8] The second medical expert, Dr. David Peterson, testified
regarding Plaintiff's alleged mental impairments.  (AR 53-59.)
As previously noted, the ALJ found that any mental impairment was
not severe.  (AR 20-23.)  Plaintiff has not challenged that
finding.

14

kneel, crouch, and crawl; never climb ladders, ropes, or
scaffolds; and never reach at or above shoulder level with the
right arm.  (AR 23.)  In so finding, the ALJ accorded
"insignificant weight" to Dr. To's October 2013 RFC assessment
and "significant weight" to Dr. Alpern's November 2013 opinion.
(AR 26.)  For the reasons discussed below, the ALJ did not err in
discounting Dr. To's contradicted opinion.

     As an initial matter, Plaintiff incorrectly asserts that the
ALJ was required to give "clear and convincing" reasons for
discounting Dr. To's opinion.  (See J. Stip. at 10.)  Because Dr.
To's opinion was contradicted by Dr. Alpern's, the ALJ needed to
state only specific and legitimate reasons for rejecting it.  See
Carmickle, 533 F.3d at 1164; see Riggs v. Colvin, No. SACV
13-1496-MAN, 2015 WL 1476387, at *3 (C.D. Cal. Mar. 31, 2015)
(when treating physician's opinion is controverted by testifying
medical expert's, ALJ may reject treating-physician opinion based
on "specific and legitimate" reasons).  As discussed below, the
ALJ met that standard.

     The ALJ permissibly discounted Dr. To's opinion because "the
extreme functional limitations [he] provided" were "inconsistent
with his own treating notes," which "reveal mostly normal and
insignificant findings."  (AR 26.)  Indeed, apart from a notation
of shoulder tenderness in September 2012 (AR 595), Dr. To did not
record any abnormal findings during his examinations (see AR 189,
211, 244, 265).  Such insignificant findings fail to support his
opinion that Plaintiff was so incapacitated by his back and
shoulder conditions that he was unable to, for example, walk more
than a block, sit for two hours in a workday, stand and walk for

two hours in an eight-hour day, or lift even 10 pounds.  (AR 680-81.)

The ALJ also permissibly discounted Dr. To's opinion because it was "inconsistent with the record as a whole."  (AR 26.) Indeed, as the ALJ noted (id.), Dr. To opined that Plaintiff's back and shoulder conditions resulted in extreme physical limitations, but Plaintiff did not seek any treatment for those conditions until mid-2012, long after his alleged onset date, in June 2010 (AR 243, 265, 372).[9]  Moreover, several of Dr. To's findings — such as that Plaintiff would "constant[ly]" miss work and had to avoid concentrated exposure to cold, heat, humidity, chemicals, perfumes, odors, dust, gases, and other environmental conditions — are not supported by his own or any other doctor's findings.  Thus, the ALJ permissibly discounted Dr. To's opinion because it was unsupported by his treatment notes and the record as a whole.  See § 404.1527(c)(3)-(4); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Batson, 359 F.3d at 1195 ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); see also Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009)

---

[9] Plaintiff now asserts that his delay in seeking treatment was attributable to his alcoholism (J. Stip. at 12), but as discussed in Section B, nothing beyond counsel's unsupported assertions and a stray remark by Plaintiff's wife even suggests that Plaintiff's failure to seek treatment was attributable to his alcoholism, as opposed to some other reason; indeed, he sought medical treatment months before he stopped drinking.

(contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion).

The ALJ also observed that Plaintiff's "[t]reating providers accepted his self-reported conditions as true, when, in fact, such statements are gross exaggerations." (AR 26.)  Indeed, given the lack of objective clinical findings supporting Dr. To's opinion, it appears to be based substantially on Plaintiff's subjective complaints, which, as discussed in Section B, the ALJ properly discredited.  As such, this was a valid reason for according "insignificant weight" to Dr. To's opinion.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's subjective complaints); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." (citation omitted)); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (finding that ALJ properly disregarded physician's opinion when premised on claimant's subjective complaints, which ALJ had already discounted).

The ALJ also correctly found that Dr. To's opinion likely did not establish that Plaintiff was disabled because he believed that Plaintiff's impairments had not lasted, and could not be expected to last, for a period of at least 12 months.  (AR 26, 679); see 42 U.S.C. § 423(d)(1)(A) (defining disability as "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); Leon v. Astrue, No. 1:10-CV-0077 SKO, 2011 WL 1077679, at *9 (E.D. Cal. Mar. 21, 2011) (finding that doctor's opinion "did not establish that [p]laintiff was disabled" in part because he "opined that [p]laintiff's impairments neither lasted nor were expected to last for more than twelve months"). Plaintiff argues that "in making this finding, the ALJ ignored the fact that Dr. To had elsewhere in his report indicated that Plaintiff's limitations were 'permanent.'" (J. Stip. at 5 (citing AR 683).) But the ALJ was aware of that portion of the report, as he noted it during the hearing and observed that it rendered the opinion "internally inconsistent." (AR 49.) Moreover, Dr. To wrote "permanent" in response to a question asking the earliest date on which Plaintiff's limitations appeared; but Plaintiff did not need a cane in 2010, when he worked as a waiter until he was fired. Thus, it is not clear what Dr. To meant by his use of "permanent." In any event, even if the ALJ relied on this factor in error, it was harmless because he gave other specific and legitimate reasons for discounting Dr. To's opinion. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

Finally, Dr. Alpern's contradictory opinion, which the ALJ accorded "significant weight," provides another specific and legitimate reason for rejecting Dr. To's opinion. (AR 26.) As the ALJ noted, Dr. Alpern's opinion was "consistent with the

1  record as a whole." (AR 26.)  Indeed, his opinion that Plaintiff

2  had a reduced capacity to lift, use his right arm, and perform

3  some types of postural movements was supported by Dr. Hall's

4  finding that Plaintiff had difficulty moving his right shoulder,

5  somewhat reduced motor strength, and possible cervical

6  radiculopathy (AR 607-08, 635) as well as by diagnostic testing

7  showing a right-shoulder tendon tear and mild degenerative

8  changes of the shoulder (AR 662).  The ALJ also permissibly

9  relied on Dr. Alpern's opinion because he reviewed the medical

10  evidence of record before rendering his opinion and was familiar

11  with Social Security regulations.  (AR 26; see also AR 46, 48);

12  § 404.1527(c)(6) (ALJ may consider doctor's "amount of

13  understanding of our disability programs and their evidentiary

14  requirements" and "extent to which [he] is familiar with the

15  other information in your case record").

16      Plaintiff argues that Dr. Alpern's opinion cannot constitute

17  substantial evidence because it "did not rest on independent

18  clinical findings of his own (because he never examined

19  Plaintiff), nor did it rely upon clinical findings or tests which

20  were not considered by Dr. To." (J. Stip. at 9 (citing Orn v.

21  Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("When an examining

22  physician relies on the same clinical findings as a treating

23  physician, but differs only in his or her conclusions, the

24  conclusions of the examining physician are not 'substantial

25  evidence.'").)  But it does not appear that Dr. To reviewed the

26  entire medical record before rendering his opinion — indeed, he

27  failed to list any of the diagnostic testing in support of his

28  assessment or even mention Plaintiff's torn shoulder tendon, nor

did he refer to the clinical findings of any of Plaintiff's other treating doctors.  Thus, Dr. Alpern did consider medical evidence that Dr. To apparently did not.  As such, Plaintiff's argument is not persuasive.

Plaintiff also contends that Dr. Alpern did not consider the CT scan showing that Plaintiff had a bullet lodged in his vertebra (see AR 647-48), pointing to the doctor's testimony that an MRI or CT scan documenting his low-back condition would have been "helpful."  (AR 47.)  But during the hearing and before rendering his opinion, Dr. Alpern specifically asked Plaintiff's counsel whether there was "an MRI or CT of the back" and counsel answered, "No, sir."  (AR 46.)  Thus, any failure to consider the report is due at least in part to Plaintiff's own failure to identify it.  See Solorzano v. Astrue, No. EDCV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) ("Counsel are not supposed to be potted plants at administrative hearings . . . [t]hey have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed").  In any event, Dr. Alpern also noted that Plaintiff had a "bullet somewhere in his chest," which was apparently accurate (see AR 188 (Dr. To noting bullet fragments near lower back and chest)), and that there was "some documentation" of the extent of his low-back condition (AR 47), and he went on to accommodate that condition by finding that Plaintiff could perform only a limited range of light work. Nothing in the CT report renders that assessment unsupported by substantial evidence; rather, it showed old, healed fractures of the rib and vertebra, a bullet fragment lodged in the T11

vertebral body, and "mild" degenerative disc disease but normal
alignment of the thoracic spine, no listhesis, and no significant
central-canal stenosis.  (AR 647-48.)  Dr. Alpern's opinion
therefore constituted substantial evidence supporting the ALJ's
decision.   See Tonapetyan, 242 F.3d at 1149 (holding that
opinions of nontreating or nonexamining doctors may serve as
substantial evidence when consistent with independent clinical
findings or other evidence in record); Andrews v. Shalala, 53
F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining
advisor need not be discounted and may serve as substantial
evidence when they are supported by other evidence in the record
and are consistent with it"); Morgan v. Comm'r, Soc. Sec. Admin.,
169 F.3d 595, 600 (9th Cir. 1999) (testifying medical-expert
opinions may serve as substantial evidence when "they are
supported by other evidence in the record and are consistent with
it").

Plaintiff also argues that in rejecting Dr. To's opinion,
the ALJ ignored evidence that Plaintiff was prescribed a cane for
ambulating in the community.  (J. Stip. at 4.)  It is true that
in May 2012 a physical therapist provided Plaintiff with a cane
for use "at this time" for "community ambulation" (AR 373-74) and
that Plaintiff was prescribed a front-wheel walker when he was
discharged from the hospital in July 2012 (AR 275).  But Dr.
Alpern testified that "no supporting evidence in the record"
showed that Plaintiff then needed to use a cane (AR 51), and some
medical reports showed that Plaintiff had a normal gait (see AR
189 (Dr. To noting in March 2012, nearly two years after alleged
onset date, that Plaintiff had normal gait), 678 (Dr. To's

21

October 2013 physical-RFC questionnaire in which he did not check the box for indicating that Plaintiff had "[a]bnormal gait")). Moreover, the ALJ noted Plaintiff's testimony that he "uses a cane prescribed at Kaiser 2.5 years ago" (AR 24; see also id. (noting Plaintiff's report that he "goes for 15-minute walks, using a cane")), credited Dr. Alpern's opinion that Plaintiff did not need to use a cane (AR 26), and noted that doctors at one point found that Plaintiff's leg weakness was "related to alcohol withdrawal and should resolve with time" (AR 25, 275).  Indeed, at the time the physical therapist provided Plaintiff with a cane, in May 2012, Plaintiff was by his own admission drinking and smoking marijuana every day.  (AR 192 (Mar. 2012, noting Plaintiff's report that he drinks more than five drinks every day), 275 (July 2012, noting Plaintiff's report of "nearly 39 years of daily drinking" and that he drank "2-6 bottles of wine daily prior to admission"), 284 (July 2012, noting that Plaintiff "smokes marijuana daily x 3-5 years")).  Thus, the ALJ fully considered Plaintiff's alleged need for a cane and did not err in rejecting it.

Finally, Plaintiff contends that "[i]f the ALJ believed Dr. To's report to be unclear, or otherwise inadequate to determine Plaintiff's disability status, he [was] required to contact Dr. To for clarification." (J. Stip. at 5 (citing Brinegar v. Astrue, 337 F. App'x 711, 712 (9th Cir. 2009).)  But nothing shows that the record was inadequate to allow the ALJ to properly evaluate Plaintiff's disability claim.  Rather, he discredited Dr. To's opinion because it was unsupported by his treatment notes and the record as a whole.  See Brinegar, 337 F. App'x at

712 (finding that ALJ did not err by not recontacting treating physician because "the record was adequate and allowed the ALJ to make a proper evaluation of [plaintiff's] disability claim"). Moreover, the ALJ offered to continue the hearing to allow Plaintiff to submit additional medical evidence and offered to assist in obtaining any outstanding records (see AR 41-43), but Plaintiff's counsel declined, saying that he believed that Plaintiff's "best bite of the apple is right here right now" (AR 43). As such, the ALJ did not err.

Reversal is not warranted on this ground.

B.   The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting his subjective complaints. (J. Stip. at 9-13, 16-18.)

1.   Applicable law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair, 885 F.2d at 603).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

23

impairment '[that] could reasonably be expected to produce the
pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell
v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If
such objective medical evidence exists, the ALJ may not reject a
claimant's testimony "simply because there is no showing that the
impairment can reasonably produce the degree of symptom alleged."
Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in
original).

     If the claimant meets the first test, the ALJ may discredit
the claimant's subjective symptom testimony only if she makes
specific findings that support the conclusion.  See Berry v.
Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or
affirmative evidence of malingering, the ALJ must provide "clear
and convincing" reasons for rejecting the claimant's testimony.
Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (as
amended); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir.
2014).  The ALJ may consider, among other factors, (1) ordinary
techniques of credibility evaluation, such as the claimant's
reputation for lying, prior inconsistent statements, and other
testimony by the claimant that appears less than candid; (2)
unexplained or inadequately explained failure to seek treatment
or to follow a prescribed course of treatment; (3) the claimant's
daily activities; (4) the claimant's work record; and (5)
testimony from physicians and third parties.  Rounds v. Comm'r
Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
amended); Thomas, 278 F.3d at 958-59.  If the ALJ's credibility
finding is supported by substantial evidence in the record, the
reviewing court "may not engage in second-guessing."  Thomas, 278

F.3d at 959.

2.   <u>Relevant facts</u>

In his application for DIB benefits, Plaintiff stated that he had been unable to work since June 10, 2010, because of back pain, right-shoulder and -leg pain, high cholesterol, and high blood pressure.  (AR 166.)

In a September 2012 exertion questionnaire, Plaintiff stated that he lived in a house with his family.  (AR 172.)  His back, leg, and right-shoulder pain prevented him from "moving too quickly" or "walking too long."  (<u>Id.</u>)  His daily activities included warming his breakfast in the microwave, driving his son eight blocks to school and then getting out of the car to "alleviate pain from sitting," watching television "while alternating positions to alleviate pain," and taking two to three 30- to 45-minute naps a day.  (AR 172, 174.)  Plaintiff used a cane and could walk a half block in 15 minutes before needing to rest for five to 10 minutes.  (<u>Id.</u>)  He could carry "light groceries" from his car to his house, but his wife did "the heavy shopping and lifting."  (AR 173.)  He "sometimes" tried to water the plants and wash dishes; he could stand to wash dishes for five to 10 minutes before needing to rest.  (AR 173-74.)  The only medication he took was 600 milligrams of ibuprofen once a day.  (AR 174.)

At the November 2013 hearing, Plaintiff testified that he was unable to work because he couldn't "walk well," had "pain at [his] waist" and a "ballast [sic] that is pressing against the nerve" that made him "fall sometimes."  (AR 44.)  He couldn't lift "anything" with his right arm because of shoulder

25

1  tendonitis, and he could not lift more than four pounds,

2  presumably with his left arm.  (AR 44-45.)  Plaintiff testified

3  that he had been using a cane for two and a half years and last

4  drank alcohol in June 2011.  (AR 44-45.)

5           3.  Analysis

6           The ALJ found that Plaintiff's medically determinable

7  impairments could cause his alleged symptoms, but that his

8  statements regarding the intensity, persistence, and limiting

9  effect of those symptoms were not entirely credible.  (AR 26.)

10 For the reasons discussed below, the ALJ did not err in finding

11 Plaintiff only "nominally credible."  (AR 24.)

12          First, as the ALJ noted (AR 24), Plaintiff claimed to have

13 been totally disabled by his back, leg, and right-shoulder pain

14 since June 2010 (see AR 166), but he failed to seek medical

15 treatment for those conditions until nearly two years later,

16 right around the time he applied for DIB (see AR 188 (Mar. 2012,

17 Dr. To noting Plaintiff's complaint of "more low back pain" but

18 not providing treatment), 243-45 (May 2012, Dr. To noting "back

19 pain for years" and referring him to physical therapy), 372 (May

20 2012, physical therapy for back pain), 265-67 (Aug. 2012, Dr. To

21 noting Plaintiff's complaints of shoulder pain for first time and

22 referring to physical therapy)).  Plaintiff argues that his

23 alcohol addiction "accounts for the relative lack of treatment

24 for back pain" (J. Stip. at 12), but nothing other than counsel's

25 unsupported assertions and a stray comment from Plaintiff's wife

26 that all he liked to do was drink and sleep even suggests that

27 his failure to seek treatment was attributable to his alcoholism

28 as opposed to some other reason.  Cf. Molina, 674 F.3d at 1114

                              26

(ALJ permissibly discounted plaintiff's credibility based on failure to seek counseling when "there was no medical evidence that [plaintiff's] resistance was attributable to her mental impairment rather than her own personal preference").  Indeed, Plaintiff began seeking treatment several months before he stopped drinking (see AR 188-220), further belying that that was the cause.  Plaintiff's lengthy failure to seek treatment was therefore a clear and convincing reason for discounting his subjective complaints.[10]  See Tommasetti, 533 F.3d at 1039 (ALJ may discount claimant's testimony in light of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

     The ALJ also noted that when Plaintiff did seek treatment, it was largely for "routine and conservative care" and alcohol detoxification.  (AR 24.)  As previously discussed, Dr. To recorded very few abnormal clinical findings and mainly recommended heat for Plaintiff's complaints of shoulder pain and physical therapy for his complaints of back pain.  Dr. Hall similarly recommended only conservative treatment for Plaintiff's shoulder condition, including ice, anti-inflammatory medication, physical therapy, and home exercise.  (AR 608, 635.)  And it

_____

     [10] Moreover, even after Plaintiff began to receive treatment for his allegedly disabling conditions, he failed to comply with his treatment plan by, for example, not attending physical therapy (see AR 672), and he declined the opportunity for injections to help alleviate his pain (see AR 634).

27

appears that Plaintiff took only over-the-counter or anti-inflammatory medication for his pain.  (See, e.g., AR 168 (disability report listing only medications for high cholesterol and anxiety and "ear drops"), 174 (Sept. 2012, Plaintiff listing on questionnaire that he took 600 milligrams of ibuprofen once a day for his conditions), 373 (May 2012, physical therapist noting that Plaintiff's medication consisted of Tylenol as needed), 608, 635 (Dr. Hall prescribing anti-inflammatory medication).) Plaintiff declined injections to help alleviate the pain.  (AR 634.)  Plaintiff's conservative treatment was a valid basis to discount his allegations of totally disabling pain.  See Parra, 481 F.3d at 751 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Lingenfelter, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

The ALJ also found that Plaintiff had made inconsistent statements regarding his alcohol use.  (AR 27.)  At the hearing, Plaintiff testified that he had not consumed alcohol since June 2011 (AR 44-45), but his medical records show that he was admitted to the hospital for alcohol detoxification in July 2012; at that time, he was noted to have been drinking up to six bottles of wine a day and smoking marijuana daily (see AR 274-75, 280, 283-84).  Plaintiff now claims that he simply had a "memory

28

problem" and actually "stopped drinking when he entered rehabilitation" (J. Stip. at 12-13), but the record shows that Plaintiff in fact continued to drink even after he was discharged from the hospital in July 2012: Dr. Hall noted in September 2012 that Plaintiff drank "wine every day" (AR 607).  Plaintiff's inconsistent statements concerning his alcohol use were a permissible basis for discounting his credibility.  See Thomas, 278 F.3d at 959 (ALJ permissibly relied on inconsistent statements about marijuana and alcohol use to discount plaintiff's testimony); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ permissibly discounted plaintiff's credibility because his "testimony and various statements regarding his drinking were not consistent"); Ancira v. Colvin, No. EDCV 14-01913-DTB, 2015 WL 7272682, at *3 (C.D. Cal. Nov. 17, 2015) ("the ALJ properly discounted plaintiff's subjective complaints based on his inconsistent statements relating to substance use").

      The ALJ also permissibly discounted Plaintiff's credibility because he claimed to have become disabled on June 10, 2010, but also reported that he had stopped working on that date because he was fired.  (AR 27; see also AR 43 (plaintiff testifying that he stopped working on June 10, 2010, because he was "fired"), 166 (Plaintiff stating in disability report that he stopped working on June 10, 2010, because he was fired "without being told why")); see Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (as amended) (ALJ permissibly discounted plaintiff's credibility because he "stated at the administrative hearing and to at least one of his doctors that he left his job because he

1   was laid off, rather than because he was injured").

2      Finally, the ALJ discounted Plaintiff's subjective-symptom

3   testimony because it was inconsistent with his daily activities.

4   (AR 27.)  Although Plaintiff contends that the ALJ did "not

5   identify which of Plaintiff's activities [were] 'inconsistent'"

6   with his testimony (J. Stip. at 12; see also id. at 17), the ALJ

7   in fact specifically noted that Plaintiff "prepares breakfast for

8   himself, drives his son to school, watches television, and goes

9   for walks"; he could "carry light groceries from his car to his

10  home and wash dishes for ten minutes." (Id.)  The ALJ also noted

11  that Plaintiff's medical records showed that he was "independent"

12  in activities of daily living.  (Id.; see AR 284.)  As Plaintiff

13  argues (J. Stip. at 16-17), his report of his daily activities

14  was somewhat more limited than the ALJ described: he stated that

15  he only warmed his breakfast in the microwave, had to get out of

16  the car after driving eight blocks to "alleviate pain from

17  sitting," and watched television "while alternating positions to

18  alleviate pain" (AR 172).  On the other hand, Plaintiff's reports

19  of his limited daily activities appear to be inconsistent with

20  his statements to medical providers that he engaged in "moderate

21  to strenuous" exercise by walking 30 minutes several times a

22  week.  (See AR 218, 245, 249, 343.)  But even if the ALJ erred in

23  relying on Plaintiff's daily activities to discount his

24  subjective complaints, it was harmless because he gave other

25  clear and convincing reasons that were supported by substantial

26  evidence.  See Carmickle, 533 F.3d at 1162-63 (finding error

27  harmless when ALJ cited other reasons to support credibility

28  determination).

1    Remand is not warranted on this ground.

2  **VI.   CONCLUSION**

3    Consistent with the foregoing, and under sentence four of 42

4  U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered

5  AFFIRMING the decision of the Commissioner, DENYING Plaintiff's

6  request for remand, and DISMISSING this action with prejudice.

7  IT IS FURTHER ORDERED that the Clerk serve copies of this Order

8  and the Judgment on counsel for both parties.

9

10  DATED: June 30, 2016            _____
                                    JEAN ROSENBLUTH
11                                  U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    [11] That sentence provides: "The [district] court shall have
    power to enter, upon the pleadings and transcript of the record,
27  a judgment affirming, modifying, or reversing the decision of the
    Commissioner of Social Security, with or without remanding the
28  cause for a rehearing."